Would you call the next case please? Case number 11-0773 Sanquia Jacobs v. Erwin McEwen Would the attorneys please identify yourselves for the record? Alright, thank you. Mr. Brandt? Alright, good morning. I read over the briefs this morning, and I think I've said just about everything I wanted to say. And just about. There's one thing that I still wanted to cover. I think in this case it would be fundamentally unfair for this court to decide this case on anything other than the issue of subject matter jurisdiction. There are a lot of other issues that are raised by the state. I think those are matters for the trial court. The trial court never had a chance to rule on them. The preliminary ruling that she made was jurisdiction. She decided she had no subject matter jurisdiction. That's why the case is here. Well, let me ask you, Mr. Brandt. Isn't the fundamental statutory scheme here that before the state can get tied in on the indemnity, they have a voice? Because, first of all, they are told that they represent the defendant in normal circumstances. Then they're told that where there is a conflict of interest, they must withdraw, such as in this case where there's a conflict between whether it was a negligent act that caused the injury or whether it was a willful or intentional act that caused the injury. And where there's a disagreement on that, they acted as they were supposed to do, which is to withdraw. Then there's a provision that says after they've withdrawn, if there is a settlement, the settlement doesn't trigger the indemnity until the state agrees to it. But there's the other part of the clause which says after there is a judicial determination as to whether it falls within the scope of the employment and otherwise qualifies, that the state would be bound by that. But it really doesn't contemplate, this statute as it's written, doesn't really contemplate a circumstance such as occurred in this case, where there was first a withdrawal and then presumably there was a decision made or maybe using Harvey Cox's old saying, not to decide is to decide. Nobody came in to represent the alleged tortfeasor. And nobody opposed or had a voice whatsoever in saying that this was either an intentional or a negligent act. And the state wasn't notified as they would be in a settlement situation and given the chance to come in before the judgment was entered, they come in, they file a motion to intervene, and the court determines that the motion to intervene should be denied. Judge, they were there. They were there. The morning we proved this up. Where was that in the record? It's not in the record because it was an addition in the trial court. The trial court looked at this and said there's no jurisdiction on this statute. What was the basis of the denial of the right to intervene? Do you recall that? First, is that in the record? No, I don't think so. I was there. I tried this case from the beginning. The reason the judge did it is because they came in and said, well, we think that the injury was intentional or willful and wrong. And there was a time that we all thought that pretty much in the early stages before we got the discovery that it really happened. Whatever you thought, Mr. Graham, doesn't the scheme contemplate that before the state gets tied in on the indemnification that they have a forum for addressing their view before the court makes a determination, addressing their view that it was willful and wrong? And wasn't that opportunity denied here? No, it was not denied. The judge, the motion judge, Judge Sergiano, and the trial judge, the judge who entered the judgment, were in constant contact with the Attorney General's office. The Attorney General, the assistant who had been in the case originally, who withdrew, actually came over to court and filed a document at the judge's request to show that notice went out to ‑‑ that showed that notice went out to the court fees. We all entreated the Attorney General to at least do something here, to stay in the case or come back in the case or at least to monitor the case at least evidence-wise. I'd like to ask you a question that probably elicits an answer more so from the state than from you. But could the state, under the posture of these statutes that require the state to withdraw where it thinks it's willful and wrong because of a conflict of interest, presumably, could the state have intervened at that stage after it withdrew as your representative? Could it have asked for intervention right then and there to follow the case? Absolutely, and that's what they should have done. The state had no business. The Attorney General had no business representing this lady in the first place because of a conflict of interest. I filed a negligence count and a willful and wanton count. They came in and they defended her on both. That's a conflict of interest. Well, the willful count is the money count, actually. And the judge was very cooperative in making findings that would facilitate the penetration through the state through the sovereign immunity defense. We proved every bit of what's in that order. We showed why it was a negligent matter and the willful and wanton business was gone. We showed who actually injured the child, at least to, I think, the court's satisfaction. In the prove-up? In the prove-up, yes. The prove-up took half a day. But let me have live witness testimony. We had the testimony of the surgeon who did the plastic surgery on the child. The surgeon also testified about how burns occur and the water temperature involved. We had a child psychologist there who testified to the psychological damage. The mother testified. The judge took the child into chambers. I was not present because the child was burned in a lot of senses. And the judge directed the underlying tort defendant to assign the indemnification claim to you. But that was a different judge. Was that pursuant to a motion? That was pursuant to a citation of discover assets. But was there a request made to the judge to compel that assignment? That's the way these citations work. You bring the cited person in and then you point out that the cited person has a cause of action for indemnity, and so the judge entered an order to assign that. It's in the statute. Now, let's assume that this was somebody, the tort defendant was somebody with assets. Okay. And they could be collected against. The plaintiff would have collected against them, and then they would have a separate action for indemnification. I would say so. And that would probably go to the court of claims, would it not? No, I don't think so. Because isn't that a situation where you're trying to reach directly into the state treasury? And wouldn't they have the right to say at that point the party really being sued, the party in interest, is the state of Illinois? The bottom pocket is, of course, the state of Illinois. The court of claims, though, is not an organization that is designed for this sort of thing. If you have a judgment. Well, how much depends on how you posture your claim for relief. If you would posture your claim for relief as a direct action for indemnification against the state, presumably the sovereign immunity defense would kick in, and the court of claims would then have exclusive jurisdiction. And once the court of claims has exclusive jurisdiction, a cap is automatically asserted against the recovery of $100,000 or what. Because court of claims does not have a right to pay out more than either $100,000 or I'm not sure the exact amount. So that would be the result if the action were direct. On the other hand, the action does not have to be direct since the state acts through individuals and consequently could take the form of a mandamus action or a mandatory injunction action to compel the state employee who controls the purse string, so to speak in this case, to certify. And so in every case, it's a question of how the plaintiff's attorney, the assignee, chooses to proceed. I don't think so, Judge. Why not? Because we're proceeding under a statute that has defined explicit duties on the part of defined officers of the state. It says what their duties are under certain conditions. There's no variation. And in a case like this where we have a liquidated amount, it is just a simple ministerial act and the state has rights. So let me ask you this. Supposing you win the mandamus action and you get an order against the employee certifying, and that would be against the DCFS employee and the attorney general, right? Right. At that point, is there another stage during which the government, so to speak, whatever that is, the body politic, could refuse to pay out? And that would facilitate, I suppose, another mandamus action against that particular officer who is directly in charge of the purse string. Is that right? That's the way I see it. In other words, if you reverse on this, you may well see us again. It's always a pleasure to see you, Judge. When I was standing in your position, I don't think I would have the guts to hypothesize if you reversed. Well, it's been a long, hard pull just to get this far. I understand, Mr. Gray. I represent an injured child and I'm doing everything by the law in the best way that I can see fit to the surgeon. So the question is then, why are you not controlling the activities of the state through your action against the employee? And if so, why doesn't the Fritz v. Johnson case kick in? I'm not familiar with Fritz v. Johnson. Well, that's... Is that a mandamus case? Well, I think... No, it's not a mandamus case, but it's a case that sets out the principle that if your action controls the activity of the state, then it should be treated as an action against the state rather than against the employee. But that is not... That does not foreclose mandamus actions from being actionable against the employee without the right to do so. It's not binding him to necessarily the jurisdiction or sovereign immunity. Well, okay. The mandamus actions have been around since the 16th century and they're traditionally used in this sort of situation where there's a public employee with a specific duty and they're in a situation where they don't have any discretion about it. That's when mandamus is used. It's called maternity writ. It isn't necessary. I understand. It's a little bit difficult to, frankly, absorb the difference in treatment that results from the use of one particular mode of relief where it's interchangeable with other modes of relief that would obtain a different result.  In other words, if the state... Let's say you have a statute that's clear on its fifths. Okay? But, nonetheless, the state refuses to be forthcoming without a court order. Compelling payment. Assume you do not mandamus but bring a direct action, albeit on a clear-cut statute that offers the state no choice, but the state, nevertheless, says, I want a judgment. Okay? Would the court of claims then be the forum to which that action would be relegated? No, Judge. We already have a judgment. That's the point. We have a judgment. The court of claims would sit up... Yeah, but you chose not to collect that judgment through a direct, enforceable means against the state. You chose instead to pursue, and I'm not saying you did the wrong thing by any means. You did what any good lawyer in your shoes would undoubtedly do. You chose to go against the employee whose certification was required to facilitate payment. But had you gone directly against the state to collect on a collection case against the state and bypass the employees who are acting on behalf of the state, you'd wind up in the court of claims. No, I don't think so, Judge. Because the statute provides for payment from different funds, the court of claims has a whole different way of handling claims and has a whole different way of paying claims. But that's where you would go if you would not join the individual employee. Judge, I didn't have that option. Well, Mr. Graham, it doesn't say that the employee will be indemnified by a particular department or by the individual employee. It says it will be indemnified by the state. And I think Justice Gordon's apt question is, if you were trying to collect against the state, you wouldn't have the option to single out the individual. You would have to sue the state. And if you sued the state trying to reach money in their treasury, you would be directed to the Illinois Court of Claims. And his point was, he's not saying that you were foreclosed from doing it the way you did it. In fact, he gave you a compliment that you chose that way to do it. A well-deserved compliment. Thanks very much. But the way I see it, the court of claims cannot be of help here. First of all, there is a ruling that says if there is an action elsewhere, like Mandamus, then there is no jurisdiction in the court of claims. And that's a court of claims decision. So that's something to think about. Now, the one thing I did want to finish up with, though, is that none of this was considered in the court of law. Nothing that we've talked about so far, since I've been standing up here, was ever considered by the court of law. By the what? By the court of law. You're saying it was just a jurisdictional decision? No, a preliminary issue. She looked at it. And the AGO agreed with this. In fact, she does in her brief. The preliminary question was, do I have jurisdiction? We argued about that. Did you argue the same case, Stuart? Oh, yes. We briefed every Supreme Court case. And they're all unanimous, incidentally. And now we have a Fourth District case. Besides those same cases. So I think this is a matter of jurisdiction. I may well see you again on another issue. Or another case. But thank you very much. Or another case. Hopefully, yes. All right. Thank you. Thank you, Mr. Griffith. I just wonder. Can you explain, at the outset, why there was no appeal of the denial of the motion to intervene? No, I don't know why there was no appeal of the denial of the motion to intervene. And doesn't that really eliminate a number of the issues that would have been raised or that you would seek to argue here? That about the propriety of the method of determination of what the content of the judgment contains? I think Your Honor put it best when you identified that there's really a glitch in the statute here. Well, could you not have asked to intervene in a more timely fashion as of the moment you chose to withdraw from this representation? And we used you in the broadest possible terms. You would have done it on a personal basis, we assume. But shouldn't the State? Couldn't the State have sought leave? Because I would imagine the denial of leave to intervene, although I haven't seen any record on it, and I'm not going to speculate in any decisive manner here, but ordinarily those decisions are made largely on timeliness basis where the impact is relatively clear on the punitive intervener. The Attorney General did come in in a timely way and ask to intervene in the case. After the default. After the default judgment. A more timely way would have been as of the time of your withdrawal since you have at that point a stake in this action. And don't you really have a stake at the time it becomes clear that there is no attorney coming in on behalf of your employee and that you may be having your rights determined not by an adversary system but rather by a default? And parenthetically even if there was an attorney coming in whose function it was to argue that this was a negligent act and not a willful and wanton act, which would be a position that would be welcomed by the plaintiffs because of its implications on indemnification, wouldn't there be a motion to intervene at that point available where you've already withdrawn because of the conflict but you still do have an interest because of the existence of the Indemnity Act to say, wait a minute, those folks on both sides agree that it was a negligent act. We don't. That may be. And there was a motion to intervene. I think it's important to keep in mind that that could have been presented earlier. But that's not before us. None of that is before you. But what we do know from that record. How is that before us now? None of that is before you now. What happened below is not before you now. But I would like to point out since we're discussing those proceedings and there's been some characterization of them, that we don't agree with the characterization. We don't know that there was evidence put on that the judge heard. We just see this default order. The Attorney General did come in on a motion to intervene. That doesn't go anywhere with us. Neither there nor here. The last point I'd like to make about that. Because all we have is now a finding by a judge whose handling of that case of the default procedure, other than perhaps some aside with regard to the motion to intervene, although that's not even a challenge. We have no basis to assume any kind of irregularity at all on the part of the trial judge. But we also have no basis to assume that there wasn't some irregularity. Nor would we want to do that based on the general reputation of that trial judge, for example. But at any rate. But hasn't that ship sailed anyway? Yeah, that's exactly right. I don't know if that ship has sailed. There is a court finding. You've identified this sort of glitch in the statute where this is really a procedure that's not accounted for. This creates an anomalous situation. And perhaps on the merits, it may be the case that there has to be some consideration of what happened in that forum. And that might have to be reopened. Well, I identified that glitch. I'm not sure that was ever argued by you in your brief. No, because I don't really think that's the issue here. That might be a problem going forward. Let's go to a different issue, which is really what discretion is there under any circumstance? In other words, if I might. Okay, go ahead. With your indulgence. The question is this. Are you questioning the fact that the case law, including the Supreme Court in Senn and in all the progeny of Senn, including the dictum in O'Donnell, would agree that the sovereign immunity defense will not be applicable in a mandamus action? Do you agree with that as a general rule? As a general rule. But you say in this particular case the mandamus action is inappropriate because the activity being enforced is not clearly mandated so that there may be an exercise of discretion involved. Is that right? I don't mean to interrogate you like I was leading the witness, but we might be able to cut some time down if that is not something that you think ought to be disputed. Because I'm going to come down with something here that works away from your interest, so you may not want to agree with that. But at any rate, if you do agree with that, then the question is, where do you get the uncertainty that you would have urged in your brief would apply to the mandate on the state official to require his certification? You say he challenged willfulness and wantonness. And by saying that it was willful and wanton and beyond the scope of the employee's employment and therefore did not want his certification. That's what you said. So because of that initial challenge, you now say it is no longer a ministerial act on the part of the state official to certify the demand for payment. Is that right? No, Your Honor. Okay, correct. I'm not saying that the certification is inappropriate because of anything to do with whether this was wanton and willful misconduct. I think there are two issues here that relate to sovereign immunity. One, I think, has come out a bit in the questioning so far, which is the way you can look at this is, and I think this is how the circuit court was looking at this, is you can call this certification of the judgment for payment against a state employee, but you have to look at what that essential nature is. So let's do that. When we look at what that essential nature is, this is the quintessential claim against the state for money. It's like a debt collection action. It's pay and money judgment. So all of the sovereign immunity cases, even though there are discussions of mandamus and so on, but a principle that follows through the cases is substance over form. And the substance here is this is collecting a judgment. So you don't agree with my initial premise then, which is that when it's a mandamus action, the Supreme Court has spoken so as to deny the sovereign immunity defense. That's what you're attacking. I didn't get that out of your brief, but let's assume that that's what you're saying. First of all, the language in the Supreme Court Senn case and in the dictum which excludes the mandamus actions from the result in the O'Donnell case don't make those distinctions. They simply say it's not a present case. It's a future conduct case. Mandamus-ing someone, ordering somebody to do something in the future. Okay? And that that somehow is no longer a subject to sovereign immunity. They also say that where the right is clear-cut, requiring the official through mandamus to comply, is in effect telling him to act according to his duty, rather than focusing on the fact that in doing so, he will be subjecting the state to a payout. That you cannot use the sovereign immunity defense to protect an official against doing his duty and not violating the statute, the enabling provision that mandates that duty. And that's the other way that I think sovereign immunity comes into play here, is because it's been posited that there's this statutory duty, and that's an incorrect premise. Let me just ask you about that, because under Section 2B of the Indemnity Act, it says, in the event the Attorney General declines to appear, et cetera, on the grounds that the act or omission was not within the scope of employment, or was intentional, willful, or wanton misconduct, and a court, skipping words, finds that the act or omission of the state employee was within the scope of employment, which it did here, and was not intentional, willful, and wanton, which it did here, the state shall indemnify. Now, clear cut, and what discretion would an official of the state have in denying or granting certification? Doesn't that mandate certification? I think I can, I hope I can clear that up. Because the misapprehension here is the certification procedure comes in in a different section, and that is a procedure for payment from a designated fund. And I'd like to talk about that more, but the idea here is, yes, it says the state shall indemnify. So there can be indemnification rights that are provided in the statute, and that's different from whether, and this is kind of a, this, I think, is such an understated case. Except that there's a statute that requires, if you're saying that the certification is not something spoken of in D, it simply says the state shall pay, but it doesn't say that the employee must certify to facilitate that. But there is another section that says that judgments and settlements have to be certified. And that procedure, that's a procedure. And they're going to be in pari materia with this section, aren't they? It's a very difficult distinction that you're making. It's what in a non-official forum would go as an excellent try. The reason, the distinction here is that the certification procedure is very specific. It's not something you can use in all circumstances. As I say, you could have these indemnification rights but not be able to use this procedure. And if you look at the procedure, which is in Section E, there are limits that the General Assembly's placed on it. And there's no duty to act outside. There's no, you can't do it. Well, tell me how B is going to be implemented without the activity of the state officials mandated in ordinary judgments to certify the judgment. How otherwise payment will result under B? Well, then you're in the position, then a person is in the position, they can't use the certification procedure. Well, what are they going to do? Then they are in the position of they have a claim for money against the state. And the traditional venue for that is in front of the state. Well, why couldn't they mandamus the comptroller? Under those circumstances. There's still got to be, the state doesn't have hands, it has people. I think mandamus-ing the comptroller would wind up in, I mean, that's money. You would mean it acts only through people. And whoever they are, they would be susceptible to mandamus. And why should we read this statute as extraordinarily excluding those who ordinarily certify judgments from certifying this judgment when there is a reversal by the court of the original evaluation made by the attorney general? Isn't there a situation here under 2B where if the court makes the determination, which is specifically expressly set out in 2B, that that's game, set, match. All that needs to be done is somebody has to write the check. And isn't this, in all candor, a situation where the state missed the boat on when to oppose those factors that would trigger the indemnification? Had they come in, either before the judgment or had they appealed the denial of the motion to intervene, there would be a forum for knocking out the underpinnings of 2B that require the certification. And having failed to do so in a timely or an appropriate manner, is there anything left that gives any discretion under the sun to the person who they're trying to control under this mandamus? Yes, because the certification procedure is only available in limited circumstances. One of those circumstances is that you have to read the whole certification procedure. It goes to, it creates certification for payment from a designated fund. From a designated fund. The second sentence refers you to a designated fund. And then when you look in the Civil Administrative Code, we hear more about that fund. And that fund is, the fund is set up, it's for paying judgments out of the Indemnification Act. Let's assume that's true, Ms. Wonder. You file then the mandamus action. The circuit court hears the mandamus action. You make that argument that you're in the wrong fund. The court then presumably denies the mandamus because they buy your argument that you're in the wrong fund. Then there is the availability of a separate mandamus action against whomever you think is the right entity to write that check. But how does that in any way give any discretion to the actor on the part of the state to pay that judgment? The whole essence of this really is you're implying here that somebody would have the right to challenge the factual determination made at the time the judgment was entered that would trigger the indemnity responsibility of the state. I'm putting aside the factual determination. You're conjoining, in other words, the Indemnification Act with 405-something-20, which combines it with the special, that talks about the special fund resulting in a limitation of $150,000. But that deals with funded payment. It doesn't deal with non-funded payment. I think it deals with, it is a limit on the use of the certification procedure. The certification, it's a certification for payment from this designated fund. Attorney General cannot certify a payment for a judgment in excess of $150,000. But the Indemnity Act has its own provision for certification and doesn't rely on 405, whatever the full citation is. The certification is in both places. It is in the Indemnification Act, which talks about this designated fund. Well, you're trying to read apart a material argument into something that is apples and oranges, aren't you? I would say they're not apples and oranges, and they're very much the same apple. Did you make that argument, Delores? These details about how the fund, the details about how the certification worked were not before the Circuit Court. But I think they're very helpful to understanding the issues, to have a full understanding of the issues on the appeal, and they are, they inform the sovereign immunity argument because there is no, the Attorney General can't use the certification procedure here because of the cap and for an additional reason that I'd like to explain. So in saying this is just to make a state official perform their duty, there is no statutory duty because certification is this limited procedure that is only available. The legislature is only provided for its use in these certain circumstances. You can have an indemnification, it's broader, but you can only use the certification procedure in these more limited circumstances. So it's your belief that in order to try to enforce the indemnity, that they would have to file a separate action, that action would have to go to the Court of Claims? Yes, because that is, if you file outside that procedure, the legislature has only given us one procedure for certain types of claims. They haven't told you, here's what you can do for the rest. So then you have a claim for money against the state. Counsel, the parties who are charged with certifying under 20 ILS 405, 405-105, are not the same. The Director of Claims, is he the party who certifies for an ordinary indemnification claim, or is he just the party who has to certify for purposes of claims against the fund? Because it talks about the Director being the Director of Claims. It's not an identical person, is it? It refers back to the certification procedure that we're talking about because it's talking about certification from the Attorney General and the department head. This is where, that other statute is where the Indemnification Act certification procedure creates a designated fund and then sends you over to this other statute. It's like, here's the fund we're talking about. All right, is there anything else? The real point here is sovereign immunity, and what the court did is look at this and say, hey, this talks about certification, this talks about mandamus, but let's put substance over form. This is an action against the state. This belongs, there's no value in the circuit court. Perhaps there's one in the Court of Claims. It's a money judgment. But whenever you mandamus a state official, what else are you doing but ultimately controlling some activity on the part of the state that is going to be acting through the action that is being mandamused? But there are differences in kind and in degree. It can't bear up to a generalized statement of that nature without being further fine-tuned by what the Supreme Court has already articulated in cases like Sen and O'Donnell. As the circuit court was looking at it, this is the whole nature of the action. I think there's another issue here that informs sovereign immunity. It would also be relevant to considering whether they state a mandamus claim, which is that there is no clear duty under the Act because you can't use a certification procedure in these circumstances. I've talked about one of the reasons why not, because the procedure only can be used for judgments that do not exceed $150,000. Only through the funds, through 405, 405. And through a designated fund, and the judgment is limited. That's all you can do with certification.  No, the state can make a payment outside of certain funds. CAF can, right? Yes, but it can't use the certification procedure. Then you're doing something different. And this is to mandamuse the certification procedure so there are limits on it. You can't use the certification procedure mandated in 405, but you can use the certification procedure mandated in 350. They are the same. It's all the same procedure. Thank you. And I'll defer to my brief for the rest of my arguments. Thank you. I appreciate it, Ms. Wander. Any final words, Mr. Graham? I have a couple final words. I never heard of Section 405 until I read Ms. Wander's brief. And I, of course, was very interested.  It was never heard of. Well, is she precluded, as the appellee, from raising whatever it takes up here to save the judgment below, even if it wasn't argued there? That's a rhetorical question. We're talking about, well, I think in this situation, in this posture of the case where it was dismissed the law on jurisdictional grounds, I think it's a step. Here's the point. The court below never got to even think about 405 because it was never cited. It was never mentioned. It was never brought up. Certainly news to me. The other is that the court never got to rule on it. We didn't get to argue it. And on top of that, it doesn't say anything about the jurisdiction. Do you have an argument to rebut the state's position regarding the impact of 405? I did respond in my brief just because it came up. I've read 405. I haven't read it. What do you think? I think it's a funding device. I think it's basically to provide insurance coverage for some claims. Don't you think, though, that it reflects some sort of a glitch or lack of coordination in the state legislative process not to interarticulate 350 with 405? I wouldn't call it a glitch, but they do not refer to each other. They are clearly separate acts drawn, I guess, at separate times. But I think also for different reasons. I think the 405, my take on it, is that it's to provide prompt payment of smaller claims and to put a limit on those claims, which is the $150,000. And I don't think it affects our other section of the Indemnity Act business at all. I think, though, that the trial court could not have ruled on that because it wasn't argued. What we have here is an issue of jurisdiction. I'm back on this again. I think just about everything that we've talked and argued, it's been interesting, and I'm glad to talk about it. But what I'm concerned with is whether the court below had jurisdiction to hear any of this stuff. Part of what we're talking about is tied inextricably into that. I'm not sure it's inextricable. It's been interesting, and I'm glad to talk about it. I've lived with this case for many years, and I'm glad to discuss it. But it occurred to me while I was just sitting there that every single claim, anything that happens under that indemnity statute, is a claim for money or to facilitate a claim for money against the state. That my case for Sankara-Jacobs is no different from any of the other stuff that's being processed under that statute. And that if the state is right that these are all claims that belong in the court of claims, I think it's absolutely contrary to any reasonable interpretation of the statute. All right. Thank you very much, Mr. Graham. We'll take the matter under advisement, and we will issue a ruling in due course. Thank you both for excellent briefs and oral presentations. Thank you.